IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHAWN LEE HALVERSON,

                        Plaintiff,                              OPINION AND ORDER

        v.
                                                                20-cv-577-wmc
ANDREW M. SAUL,
Commissioner of Social Security,

                        Defendant.

        Plaintiff Shawn Lee Halverson seeks judicial review under 42 U.S.C. § 405(g) of the

Social Security Commissioner's final determination that he was not disabled.  On review,

plaintiff argues that Administrative Law Judge ("ALJ") Michael Schaefer did not properly

consider an MRI taken of Halverson's spine in October of 2017.  After consideration of

his arguments, the court concludes that the ALJ did not err and will affirm the decision of

the Commissioner for reasons explained below.  The oral argument set for Friday, May 14,

2021, is cancelled.

BACKGROUND[1]

        On December 15, 2016, Halverson filed a Title II application for a period of

disability and disability insurance benefits, alleging an onset date of June 26, 2015.  (AR

at 13.)   In his application, he alleged disability due to spine conditions, shoulder

conditions, diabetes, and tick diseases.  (AR at 283.)  However, the ALJ concluded -- and

plaintiff does not dispute -- that only his spine and should conditions constitute "severe

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #13.

impairments."  (AR at 15.)

After his disability application was denied initially and on reconsideration, Halverson requested a hearing, which was held before ALJ Schaefer on June 19, 2019.  (AR at 13.)  Two months later, the ALJ issued a written opinion considering Halverson's application under the sequential evaluation process set forth by the Social Security Administration.  (AR at 13-25.)  Material to the parties' dispute on remand, the ALJ concluded that Halverson retained the residual functional capacity ("RFC") to perform a restricted range of light work.  (AR at 18.)  In arriving at this finding, he reviewed evidence of Halverson's back problems (AR at 18-23), including the October 2017 MRI (AR at 19).  The ALJ also considered the RFC conclusions reached by state agency physicians Sai Nimmigadda, M.D., and Marcia Lipski, M.D., as to Halverson's RFC, although the ALJ's formulation ended up more restrictive than that proposed by either state agency doctor.  (AR at 18, 22.)

Considering Halverson's age, education, work experience, and the ALJ's RFC, the vocational expert testified that there existed jobs in significant numbers in the national economy that he could perform.  (AR at 23.)  Accepting the VE's opinion, ALJ Schaefer concluded that Halverson was not disabled within the meaning of the Social Security Act and denied his application.

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled.  Findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and ensure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As noted, the focus of plaintiff's appeal is on the ALJ's consideration of a 2017 MRI of Halverson's spine. The medical record shows that the MRI was taken at St. Mary's Hospital on October 13, 2017, and interpreted by radiologist Steve Brown, M.D. (AR at 587.) After comparing the MRI to one taken on March 24, 2015, Dr. Brown wrote the following as his clinical impression:

> 1. Stable postoperative anterior fusion at C5-C6.
> 2. Slightly worsened disc bulging at C6-7 which is moderate. This causes moderate to severe bilateral foraminal narrowing which is slightly worsened compared to the previous study.
> 3. Otherwise stable cervical spine MRI and no cervical cord abnormality is seen.

(AR at 587.) Neither state agency doctor appears to have reviewed the October 2017 MRI nor Dr. Brown's interpretation of it. In addition to Dr. Nimmagadda, who rendered an opinion in April of 2017, six months before the MRI (AR at 112-23), it also does not

appear that Dr. Lipsky received or reviewed the relevant records from St. Mary's, including the MRI results, before rendering her December 2017 opinion (AR at 140.)  However, the ALJ did address the MRI in his written opinion, noting:

> An October 2017 MRI of the claimant's cervical spine (done at the claimant's request per his attorney's advice, EX. C12F/3) showed a stable postoperative anterior fusion at C5-C6 but slightly worsened moderate disc bulging at C6-7 causing moderate to severe bilateral foraminal narrowing, slightly worsened compared to the previous study (EX. B13F/1). Otherwise his cervical spine is stable with no cervical cord abnormality seen (EX. B13F/1).

(AR at 19.)

While plaintiff argues that the ALJ improperly "minimize[d]" the significance of the 2017 MRI, without offering any relevant argument or evidence to support this conclusion (Pl.'s Br. (dkt. #20) 10-11),[2] the ALJ did no such thing.  In fact, the ALJ quoted almost verbatim Dr. Brown's clinical impressions of the image.  Although plaintiff may have wished the ALJ had given more weight to the MRI, this court is not generally in the business of reweighing evidence considered by the ALJ, at least where accurately characterized by medical opinion.  *See Clifford*, 227 F.3d at 869.  Moreover, the ALJ had ample grounds to give the MRI limited weight in light of Dr. Brown having found generally stable control spine from 2½ years before with "slightly worsened maleate at C6-7."

Plaintiff next argues that the ALJ improperly interpreted the MRI results himself, as neither state agency doctor reviewed the MRI.  For support, plaintiff points to various

---

[2] Plaintiff initially appeared to argue that the ALJ failed to discuss the October 2017 MRI entirely (Pl.'s Br. (dkt. #20) 5), but later amended his argument by asserting that the ALJ *improperly* considered the MRI.

Seventh Circuit cases holding that an ALJ erred by relying on assessments by non-examining physicians that were outdated in light of new and significant medical evidence, and/or by interpreting MRIs without the assistance of a medical expert. *See Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (ALJ impermissibly "played doctor" by concluding that certain MRI results were "consistent" with his assessment without the benefit of an expert opinion interpreting the MRIs); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (ALJ erred by relying on an outdated assessment by a non-examining physician because "new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion"); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ erred by relying on non-examining physician's opinion that was made outdated by the existence of an evaluation that contained "significant, new, and potentially decisive findings"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ erred by: (1) failing to submit an MRI -- which was new and potentially decisive medical evidence -- to medical scrutiny; (2) interpreting the MRI in "barely intelligible medical mumbo jumbo"; (3) and ignoring the fact that the MRI showed a new malformation).

However, plaintiff is again mistaken.  First, the ALJ here did *not* rely on the state agency physicians' opinions.  Dr. Nimmagadda opined that Halverson was capable of light work with certain limitations, which the ALJ gave some weight, but then included *additional* limitations to address some of Halverson's historical neck and shoulder problems.  (AR at 22.)  Similarly, while Dr. Lipski found that Halverson was capable of *medium* exertional work, with some additional limitations, the ALJ accorded this opinion little weight, finding that the evidence in the record as a whole more supported an RFC of light work with

5

additional limitations.  (AR at 22.)

Second, as just explained, the ALJ did *not* interpret the MRI results without the benefit of a medical expert; rather, he *adopted* Dr. Brown's impressions of the results almost verbatim.   Nor has plaintiff offered any evidence calling Dr. Brown's findings into question.[3]  *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (plaintiff failed to meet her burden of showing that the ALJ's summary of the results of various MRIs were incorrect).

Finally, unlike the cases cited by plaintiff, the newer 2017 MRI does *not* appear to be significant or potentially decisive, especially given that both state agency doctors had the opportunity to review the 2015 MRI, and the only difference between the March 2015 and October 2017 MRIs identified by Dr. Brown was the "slightly worsened" disc at C6-7.   Given this, and the fact that the ALJ here imposed greater limitations than those proposed by either Dr. Nimmagadda or Dr. Lipski, it does not appear at all likely that the 2017 MRI "reasonably could have changed the reviewing physician's opinion," *Moreno*, 882 F.3d at 728, or required greater limitations than those actually adopted by the ALJ. *See Kennedy v. Saul*, 418 F. Supp. 3d 314, 326 (W.D. Wis. 2019) (rejecting plaintiff's

---

[3] In his reply brief, plaintiff states:  "The Commissioner argues that the ALJ did not interpret the MRI because he relied on the assessment of Dr. Brown. However, Dr. Brown was not the orthopod[edist] but the radiologist. Dr. Brown assessed the findings; Dr. Mackay interpreted them and assessed the limitations associated with the MRI findings."  (Pl.'s Reply (dkt. #21) 3.)  To the extent that plaintiff implies that Dr. Brown was not qualified, or less qualified than an orthopedist, to interpret the MRI results, this would appear to be incorrect, as a radiologist specializes in diagnosing injuries and diseases using medical imaging such as MRIs.  *See* "What Is a Radiologist?", Am. College of Radiology (last accessed May 6, 2021), https://www.acr.org/Practice-Management-Quality-Informatics/Practice-Toolkit/Patient-Resources/About-Radiology.   Regardless, the court's review of Dr. Mackay's assessment shows that he did not even review the October 2017 MRI, much less opine about it.  (*See* AR at 589-96.)

argument that the ALJ erred in giving significant weight to the opinions of state agency physicians that did not account for evidence later entered into the record in part because "the ALJ imposed even more restrictive limitations than recommended by the state agency physicians").

In this way, the ALJ's findings here are more akin to those of the ALJ in *Keys v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017) than those of any of the ALJs in cases cited by plaintiff.  In *Keys*, the plaintiff argued that the ALJ erred in giving great weight to the opinions of the two state agency physicians because those physicians had not yet reviewed two, newer spinal MRIs, which showed "mild" and "minimal" narrowing.  *Id.* at 481.  The Seventh Circuit acknowledged that the state agency doctors had not reviewed the new MRIs, but faulted the plaintiff for failing to provide "any evidence that the reports would have changed the doctors' opinions." *Id.*  As that court observed, "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Id.*

Plaintiff's final argument is that the ALJ's assessment of Halverson's subjective reports of the limiting effects of his back was unsupported "because the ALJ failed to consider a key finding" -- again, the 2017 MRI.  (Pl.'s Br. (dkt. #18) 12.)  As already explained, however, the ALJ *did* consider the MRI.  Similarly, to the extent that plaintiff is again arguing that the ALJ should have given more weight to Halverson's subjective reports, there is simply no grounds to remand on this basis.  If anything, case law emphasizes a reviewing court may reverse a credibility determination "only if it is so lacking in explanation or support" that it is found to be "patently wrong." *Simila v. Astrue*, 573 F.3d

503, 517 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2009)). Plaintiff has not begun to meet this burden. Accordingly, the ALJ's assessment of Halverson's subjective symptoms will be affirmed.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Shawn Lee Halverson's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 13th day of May, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge